**Reversed and Remanded and Opinion filed May 22, 2018.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-17-00128-CV

_____

**JOYCE CREAVEN, Appellant**

**V.**

**CAROLINE CREAVEN, Appellee**

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 16-DCV-230794**

## O P I N I O N

This is a tale of three street names. Caroline Creaven sued her mother Joyce Creaven for allegedly improperly withdrawing funds from Caroline's college fund.[1] The trial court granted Caroline's motion for substituted service of process

_____

[1] Caroline brought claims for violations of the Texas Uniform Transfers to Minors Act, Texas Property Code sections 141.001-.025, and the Texas Theft Liability Act, Texas Civil Practice & Remedies Code sections 134.000-.005, and conversion. The trial court rendered default judgment finding Joyce liable for these claims and awarding money damages, post-judgment interest, and attorney's fees for any appeal to a court of appeals or the supreme court.

and ordered substituted service. The affidavit in support of the motion, the substituted service order, and the return of service referenced addresses for Joyce with three different but similar street names. After Caroline purportedly served Joyce, Caroline moved for a no-answer default judgment, which the trial court granted. Joyce complains on appeal that the default judgment is void because Caroline did not strictly comply with the terms of the order granting substituted service in that the address in the return of service varied from the address in the order.[2] Concluding that Caroline failed to create a record reflecting that she served Joyce at the correct address, we reverse and remand.

Caroline's motion for substituted service was supported by her process server's "Affidavit in Support of Motion for Alternate Service" in which the process server attested, on page one, that he attempted to serve Joyce five times at an address on "Cambrian Park Court" in Sugar Land, Texas and, on page two, that he had determined Joyce's "usual place of business, usual place of abode or other place where [she could] probably be found" was at an address on "Cambrian Court" in Sugar Land.[3] In its "Order Authorizing Substitute Service," the trial court ordered service to be completed on Joyce at an address on "Cambrian Park" in Sugar Land. In his "Affidavit of Service," the process server attested that he served Joyce at an address on "Cambrian Court."[4]

---

[2] Joyce also complains that the trial court erred in granting Caroline's motion for substituted service because the motion was insufficient. We presume without deciding that the motion was sufficient but conclude that Caroline did not present evidence showing she strictly complied with the terms of the order granting substituted service and thus the trial court erred in rendering default judgment. We accordingly do not reach Joyce's remaining appellate issues.

[3] The trial court also ordered substituted service at an address in Katy where Joyce's relative lived. Although the Affidavit of Service does not show that Joyce was served at that address, she has not challenged that failure to comply with the trial court's order for substituted service.

[4] For ease of reference, we summarize: the trial court ordered substituted service at "Cambrian Park." *See* Tex. R. Civ. P. 106(b). In the Affidavit of Service, the process server

On appeal, Joyce seeks to reverse the no-answer default judgment granted against her by the trial court on the basis that the trial court lacked jurisdiction to render judgment because Joyce was not properly served with process.[5] A trial court's jurisdiction is dependent upon citation issued and served in a manner provided for by law. *Santex Builders, LLC v. Guefen Const., LLC*, No. 14-08-00840-CV, 2009 WL 4810286, at *2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2009, no pet.) (mem. op.); *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 376 (Tex. App.—Houston [1st Dist.] 2007, writ denied). Unless the record affirmatively shows an appearance by the defendant, proper service of citation on the defendant, or a written waiver of service at the time the default judgment is entered, the trial court does not have personal jurisdiction to render the default judgment against the defendant. *Santex Builders*, 2009 WL 4810286, at *2; *Marrot Commc'ns*, 227 S.W.3d at 376. We review de novo whether a trial court has personal jurisdiction.[6] *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *see also Santex Builders*, 2009 WL 4810286, at *4 (addressing de novo whether service was defective and thus failed to confer jurisdiction on trial court and not addressing whether trial court abused discretion under *Craddock* in denying motion for new trial).

---

attested he served Joyce at "Cambrian Court." *See* Tex. R. Civ. P. 107.

[5] Generally, to establish her entitlement to a reversal of a no-answer default judgment, the non-answering party is required to satisfy certain factors established in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). *Santex Builders, LLC v. Guefen Const., LLC*, No. 14-08-00840-CV, 2009 WL 4810286, at *2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2009, no pet.) (mem. op.). But when, as here, the defendant establishes defective service, she need not show the trial court abused its discretion in rendering default judgment under *Craddock*. *See id*.

[6] Generally, the same standards of review and powers of disposition that govern ordinary appeals govern the review of a default judgment. *Lakeside Leasing Corp. v. Kirkwood Atrium Office Park Phase 3*, 750 S.W.2d 847, 849 (Tex. App.—Houston [14th Dist.] 1988, no writ).

3

For a default judgment to withstand direct attack, the record must establish strict compliance with the rules of civil procedure governing issuance, service, and return of citation. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994); *Authentic Brands Grp. LLC v. Porter*, No. 14-16-00477-CV, 2017 WL 2960047, at *1 (Tex. App.—Houston [14th Dist.] July 11, 2017, no pet.) (mem. op.). There are no presumptions in favor of valid issuance, service, or return of citation. *Primate Constr.,* 884 S.W.2d at 152. If the record does not affirmatively show strict compliance with the rules, the attempted service of process is invalid, the trial court has no personal jurisdiction over a defendant, and the judgment is void. *See Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007); *Porter*, 2017 WL 2960047, at *1. Virtually any deviation from the statutory requisites for service of process will destroy a default judgment. *Porter*, 2017 WL 2960047, at *1; *Marrot Commc'ns*, 227 S.W.3d at 376.

Texas law prefers personal service over substituted service. *Vespa v. Nat'l Health Ins. Co.*, 98 S.W.3d 749, 751 (Tex. App.—Fort Worth 2003, no pet.); *Mylonas v. Tex. Commerce Bank–Westwood*, 678 S.W.2d 519, 522 (Tex. App.—Houston [14th Dist.] 1984, no writ) (noting substituted service is "not the preferred method"). When the plaintiff uses substituted service, Texas law places a burden on the plaintiff to prove that he or she served the defendant in the manner required by the applicable rule. *See Vespa*, 98 S.W.3d at 752.

Texas Rule of Civil Procedure 106 authorizes a court to order a substituted method of service. Tex. R. Civ. P. 106(b)(2). "Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court." Tex. R. Civ. P. 107(f). When a trial court orders substituted service under Rule 106, the only authority for the substituted service is the order itself. *Vespa*, 98 S.W.3d at 752; *see also Date v. RSL Funding, LLC*, No.

01-12-00697-CV, 2013 WL 2146718, at *2 (Tex. App.—Houston [1st Dist.] May 16, 2013, no pet.) (mem. op.). As a result, any deviation from the trial court's order necessitates a reversal of the default judgment based on service. *Vespa*, 98 S.W.3d at 752; *see also Date*, 2013 WL 2146718, at *2.

Caroline served Joyce via substituted service under Rule 106, and thus she was required to follow the trial court's instructions precisely. *See Vespa*, 98 S.W.3d at 752. The trial court required the citation and petition to be left with anyone over sixteen years old or to be affixed on the front door at an address located on the street named "Cambrian Park" in Sugar Land, Texas. In the Affidavit of Service, the process server states that he served the citation and petition by affixing the documents to the front door at an address located on the street named "Cambrian Court" in Sugar Land.

The return of service is prima facie evidence of how service was performed. *Id*. Joyce argues, among other things, that Caroline failed to prove that she strictly complied with the trial court's substituted service order because the Affidavit of Service does not reflect that Joyce was served at Cambrian Park, as required in the order. Caroline argues that (1) substituted service was perfected as long as Joyce was served at her usual place of abode, even if the address in the substituted service order was inaccurate; (2) Cambrian Park and Cambrian Court are the same street; and (3) the process server's use of a "short form" of the address was harmless.[7] We address each of these arguments.

### 1. Was Substituted Service Completed Properly at Joyce's Usual Place of Abode?

Caroline contends that because the address in the process server's Affidavit in Support of Motion for Alternate Service—in which the process server attested

---

[7] Caroline asserts that the actual street name is "Cambrian Park Court."

Joyce's "usual place of business, usual place of abode, or other place where [Joyce] can probably be found" is at the Cambrian Court address—matches the address in the Affidavit of Service, Caroline has completed substituted service properly under Rule 106. However, the cases Caroline cites in support of this argument do not address the situation presented here in which the address in the Affidavit of Service does not match the address in the order for substituted service.[8] Here, the trial court did not order Joyce to be served "at the location specified in [the] affidavit" supporting the motion for substituted service. *See* Tex. R. Civ. P. 106(b). The court specified the address to be Cambrian Park.[9] As discussed, Caroline was required to show that she strictly complied with the trial court's instructions in the substituted service order. *See Vespa*, 98 S.W.3d at 752; *see also Sanchez v. R.S. Concrete, L.L.C.,* No. 01-17-00191-CV, 2018 WL 1056484, at *4 (Tex. App.—Houston [1st Dist.] Feb. 27, 2018, no pet. h.) (mem. op.).

Caroline similarly argues that the substituted service was perfected when Joyce was served at her "usual place of abode," citing *Pratt v. Moore*, 746 S.W.2d 486, 488 (Tex. App.—Dallas 1988, no writ) ("Neither Rule 106, Texas Rules of

---

[8] *See Sanders v. Sanders*, No. 01-11-00010-CV, 2011 WL 5100912, at *3 (Tex. App.—Houston [1st Dist.] Oct. 27, 2011, no pet.) (mem. op.) (concluding there was no evidence on the face of the record that substituted service was ineffective); *Rowsey v. Matetich*, No. 03-08-00727-CV, 2010 WL 3191775, at *5 (Tex. App.—Austin Aug. 12, 2010, no pet.) (mem. op.) (same); *Williams v. Grafflin*, No. 11-05-00138-CV, 2006 WL 3238426, at *2 (Tex. App.—Eastland Nov. 9, 2006, no pet.) (affirming default judgment on grounds that "substituted service was properly authorized by the trial court" and "substituted service was executed as authorized"); *Pettigrew v. Recoveredge*, No. 05-97-00239-CV, 1997 WL 466518, at *2 (Tex. App.—Dallas Aug. 15, 1997, no writ) (mem. op., not designated for publication) (concluding "the method of service set out in the officer's return is the precise method authorized by the trial court's order"). *But see Ratcliff v. Ratcliff*, No. 09-09-00138-CV, 2010 WL 1087517, at *1-3 (Tex. App.—Beaumont Mar. 25, 2010, no pet.) (mem. op.) (reversing default judgment because record did not show strict compliance with substituted service order ).

[9] We note that Caroline could have asked the trial court to correct the address on its order if the address were incorrect. The record does not reflect that she did so.

6

Civil Procedure, nor case law requires an order for substituted service to have an accurate address in the order for substituted service."). In *Pratt*, the return of citation included the word "Drive," and the order for substituted service did not. *Id*. at 487-88. Our sister court held that "the statement of the address is not necessary so long as the usual place of abode is the place where service is made." *Id*. at 488. However, *Pratt* was decided under a previous version of Rule 107, which governs the return of service. The current version, applicable to this appeal, requires certain information to be included in the return of service, including "the address served." Tex. R. Civ. P. 107(b)(6). Prior to the amendment, the rule required only that the return of service include "when the citation was served and the manner of service." Supreme Court Order of December 12, 2011, Misc. Docket No. 11-9250 (available at www.txcourts.gov/supreme/administrative-orders.aspx); *see also In re S.C.*, No. 02-15-00191-CV, 2015 WL 9435937, at *3 (Tex. App.—Fort Worth Dec. 23, 2015, no pet.) (mem. op.). In light of this rule change, we conclude that the reasoning in *Pratt* is no longer applicable.

Here, the trial court ordered substituted service at Joyce's "usual place of residence at . . . Cambrian Park." Caroline was required to serve Joyce in strict compliance with that order. *See Sanchez*, 2018 WL 1056484, at *4 ("When a trial court orders substituted service under Rule 106(b), the order provides the only authority for the substituted service. [A]ny deviation from the trial court's order necessitates a reversal of the default judgment based on service."); *see also Ratcliff v. Ratcliff*, No. 09-09-00138-CV, 2010 WL 1087517, at *3 (Tex. App.—Beaumont Mar. 25, 2010, no pet.) (mem. op.) ("Receiving actual notice through a procedure not authorized for service is not strict compliance with the service requirements of the order."). We conclude that Caroline failed to carry her burden to establish that she did so. *See Vespa*, 98 S.W.3d at 751-52.

## 2. Has Caroline Established that Cambrian Park and Cambrian Court Are the Same Street?

Caroline argues that she complied with the substituted service order because Cambrian Park and Cambrian Court purportedly are the same street. She asks us to take judicial notice of Fort Bend County voter records, which she asserts show that there is only one street name in Sugar Land including the word "Cambrian"— "Cambrian Park Court." Caroline attached a one-page excerpt entitled "Fort Bend County Street Index with Districts" that she alleges are voter registration records. The index includes a list of street names starting with "C," including "Cambrian Park Court." There are no other street names on the list that include the name "Cambrian."

We decline to take judicial notice of the purported voter records. First, though appellate courts may take judicial notice in certain circumstances, they generally do not take judicial notice of documents that were not before the trial court when the trial court made its challenged ruling. *Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 240 n.8 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Further, appellate courts are reluctant to take judicial notice of matters that go to the merits of a dispute. *SEI Bus. Sys., Inc. v. Bank One Tex., N.A.*, 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no writ). As a general rule, appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions that are mandated by law (e.g., calculation of prejudgment interest when the court renders judgment). *Id.*

Caroline also argues that a plain reading of the Affidavit in Support of Motion for Alternate Service shows that the addresses referenced on Cambrian Court and Cambrian Park Court "stand for the same address in Sugar Land" because the affidavit uses these two street names interchangeably. But at most, the

affidavit is internally inconsistent because in it, the process server states that he attempted to serve Joyce four times at Cambrian Park Court and then he determined that her "usual place of business, usual place of abode, or other place where [she] can be found" is on Cambrian Court. In any event, the order for substituted service, which must be strictly followed, references neither of these street names.

Caroline finally asserts that the district court clerk confirmed the street names are interchangeable because Caroline submitted a request for citation at Cambrian Park and the clerk issued the citation with the address at Cambrian Court. But this is not evidence that the two street names are the same. Indeed, it is evidence that Caroline failed to ensure that service was properly accomplished. *See Primate Constr.*, 884 S.W.2d at 153 ("It is the responsibility of the one requesting service, not the process server, to see that service is properly accomplished."). It is the duty of the court clerk to issue citations and deliver them as directed by the party requesting service. *Boyattia v. Hinojosa*, 18 S.W.3d 729, 733 (Tex. App.—Dallas 2000, pet. denied) (citing Tex. R. Civ. P. 99). But when a party learns or by the exercise of diligence should have learned that the clerk has failed to do so, the party is required to ensure that the job is done. *Id*. The plaintiff's duty to exercise diligence continues until service of process is achieved. *Morris v. Terrazas*, No. 11-16-00095-CV, 2017 WL 2484341, at *4 (Tex. App.—Eastland June 8, 2017, no pet.) (mem. op.). Even assuming the clerk mislabeled the citation, Caroline did not request service at the address required by the order or direct the clerk to issue a corrected citation.

In any event, if Caroline actually complied with the substituted service order—because Cambrian Park and Cambrian Court are indeed the same street or for any other reason—it was her responsibility to correct any errors in the return of

9

service. *See TAC Americas, Inc. v. Boothe*, 94 S.W.3d 315, 321-22 (Tex. App.—Austin 2002, no pet.) (citing *Primate Constr.*, 884 S.W.2d at 153, and Tex. R. Civ. P 99(a)). This responsibility extends to seeing that service is properly reflected in the record. *Id*. at 321.

Caroline had the ability to amend the return of service. *W. Garry Waldrop DDS, Inc. v. Pham*, No. 14-15-00747-CV, 2016 WL 4921588, at *3 n.3 (Tex. App.—Houston [14th Dist.] Sept. 15, 2016, no pet.) (mem. op.). Rule 118 allows for liberal amendment of the return of service to show the true facts of service. *Id*.; *see also* Tex. R. Civ. P. 118 ("At any time in its discretion and upon such notice and on such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued."). And if the facts as recited in the process server's return are incorrect and do not show proper service, the one requesting service must amend the return prior to judgment. *Boothe*, 94 S.W.3d at 321.

Caroline did not seek to amend the Affidavit of Service to show that service was completed at the address ordered by the trial court. Because of this failure, there remains an obvious defect on the face of the record based on inconsistencies between the Affidavit of Service and the substituted service order. *See id*. at 322.

### 3. Can Caroline Avoid Reversal by Establishing the Discrepancy between the Substituted Service Order and Affidavit of Service Was Harmless?

Caroline argues that omitting "Park" from the Cambrian Court street address in the Affidavit of Service was a harmless discrepancy that will not overturn substituted service. First, as discussed, the record does not reflect that Cambrian Park and Cambrian Court are the same street. Second, the case Caroline cites in

support of her argument, which was a bill of review rather than a direct appeal, is distinguishable from this case. *See Perez v. Old W. Capital Co.*, 411 S.W.3d 66 (Tex. App.—El Paso 2013, no pet.).

In the *Perez* case, the trial court ordered substituted service by attaching a copy of the order, citation, and petition to the front door or entry way of a certain address. *Id*. at 68. At the bill of review hearing, the process server testified that he went to the address in the substituted order and saw that there was no walkway to the front of the house and the front porch had "wrought iron restraints" with a padlock. *Id*. at 69. There was a paved sidewalk leading to a door on the side of the house that appeared to be a main entry. *Id*. Believing the side entrance to be the main entrance of the home, the process server completed substituted service by attaching the documents there. *Id*. Moreover, the defendant and her husband both attested that the side door was the primary entrance. *Id*. at 72. Our sister court found that the judge reasonably concluded that the side door was effectively the front door or entry way. *Id*. at 73. Thus, the court did not find a "harmless discrepancy"—it affirmed the trial court's finding that the defendant was duly served by substituted service.[10] *See id*.

Here, the Affidavit of Service reflects a different street name than the street name in the substituted service order, and there is no evidence in the record that

---

[10] In asserting her argument, Caroline relies on this dicta from the *Perez* court: "Listing a different address on the return and citation will not render service invalid." 411 S.W.3d at 73. The *Perez* court relied on a case from 1985 in making this statement. *Id*. (citing *Garcia v. Gutierrez*, 697 S.W.2d 758, 760 (Tex. App.—Corpus Christi 1985, no writ). So that case was decided before the 2011 amendment to Rule 107, which now requires the return of service to include "the address served." Tex. R. Civ. P. 107(b)(6). And the *Perez* court also stated that "alterations of a name, such that a court of appeals could not decipher whether the person listed on the service was the same as both names indicated, do render service ineffective." 697 S.W.2d at 73. Here, we cannot decipher on this record whether all the "Cambrian" street names represent the same street. Moreover, the discrepancy here is between the *substituted service order* and the *Affidavit of Service*. The affidavit, as written, does not reflect that the process server strictly complied with the instructions in the order.

these addresses refer to the same place. Accordingly, we cannot conclude that on this record, Joyce was served in strict compliance with the substituted service order.

### *Conclusion*

We conclude that in failing to submit a return of service that shows Joyce was served at the address referenced in the substituted service order, Caroline failed to show she strictly complied with the order. Because of this, the record does not reflect that Caroline properly served Joyce, there is no showing that the trial court had personal jurisdiction over Joyce, and the judgment is void. *See Hubicki*, 226 S.W.3d at 408; *see also Santex Builders*, 2009 WL 4810286, at \*4.

For these reasons, we conclude that the trial court erred in rendering default judgment against Joyce. We reverse the judgment of the trial court and remand for proceedings consistent with this opinion.


/s/     Martha Hill Jamison
        Justice


Panel consists of Justices Boyce, Jamison, and Brown.

12